**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID TOM and ANDREW TOM, individually and on behalf of all others similarly situated, | : CIVIL ACTION FILE NO. : : 1:24-cv-13195-WGY : |
| Plaintiffs, | : : **FIRST AMENDED COMPLAINT –** |
| v. | : **CLASS ACTION** : |
| PREMIER SOLAR, LLC | : : **JURY TRIAL DEMANDED** |
| Defendant. | : : : |

Plaintiffs DAVID TOM and ANDREW TOM (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2.  "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.  Plaintiffs, individually and as class representatives for all others similarly situated, bring this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including Mr. David's own, regarding Mr. Andrew's property.

4.  Plaintiffs also allege that Defendant uses automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiffs sue on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7. Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

8. Plaintiff Andrew Tom is an individual located in the District of Massachusetts.

9. Defendant Premier Solar, LLC, which does business under the name "Premier Solar" is a Danvers, Massachusetts, company that sells solar panels and water purification systems.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. The Court has supplemental jurisdiction over the state law claims.

11. This Court has general personal jurisdiction over Premier because it has its principal place of business in this State.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the only Defendant is a resident of this state.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.</u>

18. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

19. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

20. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v.*

4

*Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

The Florida Telephone Solicitations Act

21. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

22. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

23. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

24. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

**FACTUAL ALLEGATIONS**

25. Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

26. Plaintiffs Toms are also "persons" as the term is defined by 47 U.S.C. § 153(39).

27. At no point have the Plaintiffs consented to receive telemarketing calls from the Defendant regarding the sale of goods or services, including solar services, prior to receiving the automated calls at issue.

28.     The calls all came from the following numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | Date | CNAM Available? | CNAM Result | Carrier |
| --- | --- | --- | --- | --- |
| 781-362-0494 | 18/09/2024 | Y | BURLINGTON MA | Twilio |
| 781-362-0095 | 08/10/2024 | Y | BURLINGTON MA | Twilio |
| 781-343-8607 | 10/10/2024 | Y | NEEDHAM MA | Twilio |

29.     As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier, Twilio, provided CNAM functionality, but the CNAM functionality transmitted a geographic location, and not the Defendant's name or telemarketer's name.

30.     This is consistent with Mr. David Tom's own telephone records, which confirm that they transmitted the aforementioned CNAM results.

31.     Twilio provides its customers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, Twilio's default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

32.     The calls were placed from a number serviced by the company Twilio, a computerized platform designed for making high volumes of automated, sequential or random calls. Twilio's website boasts the ability to make calls with "indefinite scaling," support up to 250 participants at a time, and mask caller information. *See Voice With the Power of Programmability*, TWILIO, https://www.twilio.com/voice [https://archive.ph/ktY0A].

33. Indeed, Twilio's documentation outlines in detail the computer programming code necessary to make automated calls from a list, including a computerized database of numbers, at a rate of one call per second, in addition to the code needed in order to tell the system what action to take depending on if a party answers. *See Making Calls*, TWILIO DOCS, https://www.twilio.com/docs/voice/make-calls [htttps://archive.ph/kVbSz].

34. Mr. David Tom's residential telephone number has a 321 area code, which is associated with the State of Florida.

35. That telephone number is a residential telephone line used by Mr. David Tom for personal calls and for personal, family, and household use and is billed to Mr. David Tom's residence in Florida.

36. The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

37. That telephone number is not associated with a business.

38. Mr. David Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

39. Mr. Andrew Tom has a residential telephone number with a different area code, and such telephone numbers are also and were at all times relevant on both the National Do Not Call Registry as well as the Massachusetts Do Not Call List.

40. Despite that, Mr. David Tom received at least 3 calls from the Defendant.

41. The callers were looking for Mr. Andrew Tom, presumably because Defendant was calling using a faulty telemarketing list it purchased.

42. Neither Mr. David nor Mr. Andrew requested the subject calls or were interested in the Defendant's products or services, including solar panels.

43. Neither Mr. David nor Mr. Andrew did business with Defendant or ever provide their consent to be contacted by phone.

44. The first call came in on September 18, 2024, from the caller ID 781-362-0494, which Mr. David answered.

45. The caller stated that he was from "Premier Solar" and calling about the Massachusetts Energy Program whereby the Plaintiffs could purchase discounted solar panels.

46. Mr. David Tom played along with the caller during this call, which lasted approximately four minutes, including by "confirming" the telemarketer's fictitious information it had about Mr. Andrew Tom, because otherwise he would have been unable to identify the caller calling him illegally.

47. Mr. Andrew Tom has authorized Mr. David Tom to engage in such conduct, including the conduct of confirming his name and address when a telemarketer has it, to identify people calling Mr. David Tom illegally.

48. Such conduct was eminently necessary because the Defendant did not transmit accurate caller identification information, and the other circumstances of the call led Mr. David to believe that the Defendant might have been concealing its identity.

49. Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified the number that called as an anonymous and generic robocaller who stated that they were working "Alongside Mass Energy." *(781) 362-0494 is a Robocall*, NOMOROBO (Apr. 11, 2025), https://www.nomorobo.com/lookup/781-362-0494 [https://archive.md/iBsIi].

50.     Plaintiff Mr. David's telephone log from his telephone company confirms that he did not have any further contact with the Defendant that day, including by calling back:

| Date/Time | Number | City | Count |
|---|---|---|---|
| 09/18/2024 06:58:58 PM | 321. | COCOA | 1 |
| 09/18/2024 01:15:22 PM | 312. | CHICAGO | 2 |
| 09/18/2024 12:56:56 PM | 336. | BOONVILLE | 1 |
| 09/18/2024 12:38:44 PM | 321. | EAUGALLIE | 1 |
| 09/18/2024 12:37:37 PM | 321. | ORLANDO | 1 |
| 09/18/2024 12:31:06 PM | 404. | ATLANTA | 1 |
| 09/18/2024 12:26:41 PM | 781.362.0494 | BURLINGTON | 4 |

51.     When this number is called back, this rings to the voicemail for "Extension 5" at the Defendant. The number does not otherwise identify the Defendant. The number does not permit a caller to leave a do not call request during regular business hours.

52.     The Plaintiff Mr. David does not live in Massachusetts.

53.     The Plaintiff Mr. David does not own property in Massachusetts.

54.     The Plaintiff Mr. David did not otherwise request contact or a quote for solar from the Defendant.

55.     The Plaintiff Mr. Andrew did not otherwise request contact or a quote for solar from the Defendant.

56.     Despite this fact, Mr. David Tom received another call from the Defendant on October 8, 2024, nearly a month later, from the nearly identical caller ID 781-362-0095. This individual stated that his name was "Luca" and was calling again from "Premier Solar" regarding the "Massachusetts Energy Program" and tried to sell the Plaintiffs solar panels.

57.     When this number is called back, this also rings to the voicemail for "Extension 5" at the Defendant. The number does not otherwise identify the Defendant. The number does not permit a caller to leave a do not call request during regular business hours.

58. Because Mr. David Tom wanted to ascertain the identity of the entity continuing to call him illegally, including seeking Mr. Andrew Tom's name and address, and for no other reason, as well as to ascertain the precise identity of the Defendant, Mr. David Tom played along with the telemarketing script and actually requested more information about setting an appointment for solar panels on this second call.

59. Because the Defendant appeared to have inaccurate information about who it was calling, Mr. David Tom reasonably believed such conduct was necessary to ascertain the identity of the caller calling him illegally.

60. Mr. Andrew Tom has authorized Mr. David Tom to engage in such conduct to identify people calling Mr. David Tom illegally.

61. During the call, "Luca" stated that Mr. David would get a call from a solar engineer.

62. Thereafter, the following day, Mr. David Tom received a call from a solar engineer. Plaintiffs do not contend that this call violated the TCPA at this time but instead plead the call for context.

63. This solar engineer confirmed the Defendant's identity and the previous calls placed to the Plaintiffs.

64. As best he can recall, Mr. David Tom told the solar engineer that he was not interested, and not to call.

65. Mr. David Tom nevertheless continued to receive calls, including one on October 10, 2024 from the caller ID 781-343-8607. This individual stated that his name was "Pierre" and was calling again from "Premier Solar" regarding the Massachusetts Energy Program and tried to sell the Plaintiffs solar panels.

66. As best Mr. David Tom can recall, he again asked the caller not to call.

67. When this number is called back, this also rings to the voicemail for "Extension 5" at the Defendant. The number does not otherwise identify the Defendant. The number does not permit a caller to leave a do not call request during regular business hours.

68. Indeed, in Defendant's Answer's screenshot identified as Exhibit A (ECF No. 9-1), Defendant includes a screenshot of its automated dialer. That screenshot includes various reports, including a "dialer report."

69. These combined facts, including the generic nature of the call, the NoMoRobo report indicating that the caller is a "robocaller," the fact that the caller thought that they were calling Mr. Andrew at a Florida telephone number, the use of Twilio, inability to honor do not call requests, and screenshot of Defendant's dialer give rise to the plausible inference that an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA was used to place the calls at issue.

70. For the avoidance of any doubt, all the automated calls were placed using an automated system, but they did not play pre-recorded messages. Rather, the system used by the Defendant violates the FTSA because it uses a computer program to select and dial calls *en masse*, waits for someone to answer, and only then connects the call to a human being. It will otherwise disconnect the call, including if a voicemail answers or if a human being on Defendant's end is not available for whatever reason.

71. As such, none of the numbers from which Defendant called provided a number that could be used to call back to make a do not call request during regular business hours.

72. Plaintiffs never consented to receive calls from Defendant.

73. Plaintiffs never did business with the Defendant.

11

74. Based on the foregoing, it is evident that Defendant mass-dials calls indiscriminately, including to numbers on the Do Not Call Registry.

75. Based on the foregoing, it is also evident that the Defendant is simply calling from a faulty or otherwise bogus lead list that it purchased and not calling individuals who had expressed any legitimate interest in obtaining Defendant's products and services.

76. Plaintiffs' privacy has been violated by the above-described telemarketing calls, including by the use of Mr. Andrew Tom's name on a call sent to Mr. David Tom.

77. Plaintiffs never provided their consent or requested these calls.

78. The aforementioned calls to the Plaintiffs were unwanted.

79. The calls were non-consensual encounters.

80. Plaintiffs and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks. Moreover, their identities were misappropriated by the Defendant in order to sell goods to other persons.

## CLASS ACTION ALLEGATIONS

81. Plaintiffs bring this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

82. Plaintiffs proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of

Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

**Florida Telephone Solicitation Act Autodial Class**: All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding solar goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

83. Plaintiffs are members or otherwise possess an interest in the classes.

84. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

85. Plaintiffs and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

86. This Class Action Complaint seeks injunctive relief and money damages.

87. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

88. Plaintiffs do not know the exact number of members in the Classes, but Plaintiffs reasonably believes Class members for each Class number, at minimum, in the hundreds.

89. The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

90. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

91. There are numerous questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

    (a) Whether the Defendant systematically called numbers on the National Do Not Call Registry;

    (b) whether Defendant transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

    (c) whether Defendant made calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

    (d) whether Defendant's conduct constitutes a violation of the FTSA;

    (e) whether Defendant's conduct constitutes a violation of the TCPA; and

    (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

92. Further, Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs has no interests which are antagonistic to any member of the Classes.

93. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

94. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

95. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(c) on behalf of the National Do Not Call Registry Class

96. Plaintiffs incorporate the allegations in paragraphs 1-95 as if fully set forth herein.

97. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

98. The Defendant's violations were negligent, willful, or knowing.

99. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the National Do Not Call Registry Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

### SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

100. Plaintiffs incorporate the allegations in paragraphs 1-95 as if fully set forth herein.

101. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

102. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiffs and members of the Telemarketing Caller ID Class in a 12-month period, without

transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

103. These violations were willful or knowing.

104. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiffs and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

105. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## THIRD CAUSSE OF ACTION

### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
### On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

106. Plaintiffs incorporate the allegations in paragraphs 1-95 as if fully set forth herein.

107. Plaintiffs bring this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

108. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

109. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will

16

or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

110. Defendant failed to secure prior express written consent from Plaintiffs and the Class Members.

111. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiffs and the Class members without Plaintiffs' and the Class members' prior express written consent.

112. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiffs and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

113. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers advertising goods or services, except for emergency purposes, in the future;

B. That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

  C. That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the FTSA and $1,500 for each knowing or willful violation;

  D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Class the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

  E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: April 17, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> *Pro Hac Vice*
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, Pennsylvania 19038
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

April 17, 2025

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.

18

19